ROBERT L. BLAND, Judge.
In this- case claimant Hugh B. Proudfoot represents that he is the fee simple owner of a tract of farm land in Union district, Barbour county, West Virginia, containing 125 acres, improved by fences, orchards, dwelling house, outbuildings, and a spring. He says that in the year 1939 the state road commission of West Virginia undertook to sponsor a road project in Barbour county, West Virginia, known as project 6101-3, for the grading, draining and hard-surfacing with a rock base of a public road, locally known as the Indian Fork road, from a point near the Lower Indian Fork schoolhouse to a point near the Upper Indian Fork school and that the construction and work incident to the building of said road was shortly thereafter undertaken by the works progress administration, under the direction and supervision of the state road commission of West Virginia, and that said road was constructed and builded through his land. He contends that at the time of the construction of said road he had a fine spring of water, constructed similar to a reservoir, by a split rock and cement wall, about three feet wide and five feet long, and *79 twenty inches deep, so constructed, as he maintains, that no surface water could enter the spring.
Claimant’s land abuts on both sides of the Indian Fork road. Above the road and on the northern or upper side thereof, on a steep knoll or cliff unsuitable for farm cultivation, he maintains a hog pen and hog lot. This hog lot is very much higher than the road. The spring in question is located approximately forty feet southwest of the Indian Fork road and about twenty-three feet lower in elevation than the road. On the lower or southern side of the road is an eight room dwelling house occupied by claimant and his family. The spring is between forty and fifty feet east of the residence. The land slopes from the road in the direction of the residence and spring. The spring is built at a low point on this slope. The water flows into the spring from the right hand corner as one enters the spring house. It is the contention of claimant that the source of the water that supplies this spring is on the hog lot far above the roadway.
Claimant alleges in his petition that the state road commission, in constructing said road, through said works progress administration and its employees, made a cut in the land between said spring of water and the hog house and hog lot for a depth of about five feet, and that in making said cut it had to remove a part of the strata of rock which underlies the land of claimant, and is over and above the underground stream furnishing water to said spring, and that in making said cut and in removing a part of the said strata of rock the road commission, through its agents, drilled into said rock strata and put off large shots of dynamite or other explosives far below the road bed, and thereby cracked the underlying strata of rock and caused it to gape apart and permit surface water from the road ditch and the road bed, from the hog pen and hog lot to enter into said cracks and crevices so created in said strata of rock and thereby flow into his spring of water, and that on each occasion when it rains the water in said spring becomes contaminated, filthy, muddy and wholly unfit for human consumption.
*80 As a result of the alleged action of the road commission in the grading and shooting of the strata of rock on said road claimant says that he has been damaged and suffered loss to the amount of $1000.00, for which sum his claim is asserted.
The assistant attorney general has filed a plea denying all liability on the part of the state to respond in damages to the claimant.
The claim was heard and investigated at a continuance of the October term of this court held at Clarksburg, West Virginia, at which time the members of the court visited the road in question and made an examination of the spring alleged to have been damaged by reason of the road work.
It appears that about the time that work commenced on the project and when it was apparent that blasting would be done in order to remove the rock from a hump in the road, claimant expressed fear that injury might be done to his spring, if shooting were done. This was before there had been any shooting of the rock. At a point in the road where the hump existed the rock extended the entire width of the road. It was deemed necessary by the state road commission to' remove this hump and for that purpose to blast the rock. Holes were drilled in this rock formation from two to five feet in depth. These holes were drilled from four to six feet apart. Deposits of dynamite were then used and the rock blasted from the right of way. Claimant contends that this blasting loosened the rock and allowed the water from the hog lot and road right of way to run into the spring. He testified that in his judgment enough of this rock could have been removed with picks. The gist of his complaint is that the road commission was negligent in the manner of removing the hump from the road right of way, and that such negligence damaged his spring.
Upon the laying out of a highway the public acquires not only the right of way, but also the powers and privileges incident to that right, among which is the right to keep the highway in proper repair. To accomplish this purpose the proper *81 officers may do any act in the highway that is necessary or proper to make and keep the way safe and convenient for the public travel. They may raise or lower the surface, dig up the earth, cut down trees, and use the earth, stone and gravel within the limits of the highway in a reasonable and proper manner. 37 Cyc. 204.
Was the work done in a reasonable and proper manner in this case? Claimant contends that it was not. He maintains that the holes in the road were drilled to an unnecessary depth. The proof offered upon the hearing would appear to support his position. Before any drilling was done claimant called attention to the location of his spring and to the danger that might result from blasting the rock in the road. The road commission had notice of the location of the spring of water and its proximity to the road. It was charged with the duty of using reasonable care and diligence to avoid damaging the spring. While it is true that the road commission in building, constructing and repairing highways of the state is vested with certain judgment and discretion it cannot disregard the rights of abutting property landowners. The evidence shows that heavy deposits of dynamite were placed in numerous holes drilled in the highway at an exceeding and apparently unnecessary depth and blasted at the same time. After this blasting had been done the water in the spring became disturbed and muddy. Three or four gallons of water stood in the ditch on the roadside. Claimant informed employees of the road commission that the water in the spring was coming from the water in the ditch on the ro'adside. Workmen on the road project suggested to claimant that he and they should go to the road, stir up the water in the ditch and see what effect it would have on the water in the spring. They did so. In a short time they went to the spring and found the water beginning to become muddy. The evidence shows that within twenty or twenty-five minutes after a hard rain the water in the spring becomes muddy and unfit for use for about two days. This condition occurs whenever there is a snow or hard •srain. On June 14, 1942, after a hard rain C. R. Sigley who owns a farm adjoining the land of claimant went to the spring *82 and obtained a bottle of water, which he sealed ana which was exhibited to the court upon the hearing of the case. This water showed a heavy deposit of sediment.
We are forced to conclude from all of the evidence in the case that the spring in question was damaged in consequence of the work done on the highway. According to this evidence, not refuted by the state in any way, the work of blasting the rock from the road right of way was negligently conducted. In consequence of this negligence claimant is shown by the evidence to have sustained damage. It is true that from the year 1939 until the hearing of the claim claimant and his family have used the water from the spring for drinking and household purposes, but always after a rain or snow the family suffers inconvenience and deprivation from the use of the water.
Giving due effect to all of the evidence and a personal examination of the spring by the members of the court, we are of opinion that the claimant has established a case entitling him to a small award.
We therefore award to claimant, Hugh B. Proudfoot, in full settlement of all damages sustained or suffered by him by reason of the matters and things in his petition mentioned and set forth and as disclosed by the record the sum of two hundred and fifty dollars ($250.00).